IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN WILLIAMS, III, QUINN WILLIAMS, ON-SITE COMPANIONSHIP SERVICES, CORP., <br><br> Plaintiffs and Counter Defendants, <br><br> v. <br><br> STEVEN WILLIAMS, JR., BERNADETTE CERAVOLO, <br><br> Defendants and Counterclaimants. | 2:23-CV-00715-CCW |

## OPINION AND ORDER

Before the Court is a Motion to Disqualify Counsel filed by Defendants Steven Williams, Jr. and Bernadette Ceravolo, who seek to disqualify Hardin Thompson, P.C. ("Hardin Thompson") and Kenneth J. Hardin II, Esq. from representing Plaintiff On-Site Companionship Services, Corp.[1] ECF No. 21. For the following reasons, the Court will DENY the Motion WITHOUT PREJUDICE.

**I.   Background**

On-Site is "engaged in the business of operating community based residential care homes for disabled individuals" throughout western Pennsylvania. ECF No. 1 ¶¶ 1, 28; ECF No. 40 ¶ 1. It is a closely held corporation, though just how closely held is in dispute. Defendant Mr. Williams, Jr. claims to be On-Site's sole shareholder. ECF No. 33 ¶ 2. The individual plaintiffs, Steven Williams, III (Mr. Williams, Jr.'s son) and Quinn Williams (Mr. Williams, Jr.'s brother) contend

---

[1] Defendants also sought to disqualify Hardin Thompson from representing the individual plaintiffs, Steven Williams, III and Quinn Williams, but Hardin Thompson has since withdrawn from representing Mr. Williams, III and Mr. Williams. *See* ECF No. 48.

that they, along with Mr. Williams Jr. and non-party Sean Lateef Walters, each hold 25% of the company as the result of a 2018 agreement. ECF No. 1 ¶¶ 3, 4; ECF No. 21 ¶ 10. Defendants deny that allegation, but acknowledge that Mr. Williams, Jr. brought on Mr. Williams, Mr. Williams, III, and Mr. Walters to help manage On-Site. ECF No. 40 ¶ 4; ECF No. 21 ¶ 10.

Plaintiffs, including On-Site, initiated suit on April 28, 2023, filing a Complaint accusing Mr. Williams, Jr. and Ms. Ceravolo (Mr. Williams, Jr.'s wife and On-Site's Chief Financial Officer, according to Plaintiffs) of misappropriating On-Site's corporate funds. *See generally* ECF No. 1. According to Plaintiffs, disagreements regarding spending arose in 2022, culminating in a forensic accountant's investigation that revealed approximately $1.4 million in misappropriated funds. *Id.* ¶¶ 8–9. They further allege that when the misappropriation was uncovered, Mr. Williams, Jr. "unilaterally terminated" various key employees—including Mr. Williams, III and Mr. Quinn Williams—thereby placing the company in a precarious position. *Id.* ¶¶ 10, 14. On May 1, 2023, Plaintiffs filed a motion for a temporary restraining order asking the Court to compel Defendants to return the allegedly misappropriated funds, among other things. ECF No. 4. Kenneth J. Hardin, II, Esq. and Ashley J. Giannetti, Esq., of Hardin Thompson filed the Complaint and motions on Plaintiffs' behalf. *See* ECF Nos. 1, 5, 16.

On May 1, 2023, the Court denied the motion for a temporary restraining order to the extent that it requested *ex parte* relief and instructed Plaintiffs that it would treat the motion as one for a preliminary injunction and act promptly once Defendants entered an appearance. ECF No. 5. Plaintiffs subsequently filed a more comprehensive motion for a preliminary injunction, mooting their earlier motion for a temporary restraining order. ECF No. 16; *see* ECF No. 29. On Friday May 12, 2023, James T. Tallman, Esq., of Elliot & Davis, P.C. appeared on behalf of Defendants.

ECF Nos. 18, 19. The Court set a status conference regarding Plaintiffs' preliminary injunction motion for 2:00 p.m. on May 18, 2023. ECF No. 20.

Approximately twenty minutes before the May 18, 2023 status conference was scheduled to begin, Defendants filed their Motion to Disqualify Counsel. ECF No. 21. They argue that Mr. Hardin cannot represent Plaintiffs because of his involvement in the investigation into the alleged misappropriation and his prior dealings with Mr. Williams, Jr. and Ms. Ceravolo. *See generally id.* According to Defendants, Mr. Hardin's representation of Plaintiffs would violate Pennsylvania Rules of Professional Conduct 1.6 (confidentiality), 1.7 (conflicts of interest with current clients), 1.13 (organizational clients), and 3.7 (lawyers as witnesses). ECF No. 21 ¶ 1. Defendants argue further that these violations should be imputed to Hardin Thompson under Rule 1.10, disqualifying the entire firm. *Id.*

After discussing the newly filed Motion at the status conference, the Court ordered Plaintiffs to respond, which they did on May 22, 2023. ECF Nos. 23, 24. Plaintiffs argued that Hardin Thompson would not be committing any ethical violation by continuing its representation and that disqualification was thus inappropriate. ECF No. 24. With the Court's permission, Defendants filed their reply brief on May 24, 2023, plus a supplemental declaration by Mr. Williams, Jr. ECF No. 32.

On May 25, 2023, the Court issued a scheduling order setting an evidentiary hearing on the Motion for May 31, 2023. ECF No. 34. The Court further ordered the parties to meet and confer regarding any protections that they believed should be in place at the hearing regarding confidential or privileged information, and to submit a joint status report with their respective positions, supported by authority. *Id.* Alternatively, the Court noted that if the parties agreed that an evidentiary hearing was unnecessary, they could so state in their report. *Id.* The parties

submitted a non-compliant status report on May 26, 2023, which indicated a dispute regarding the extent to which Mr. Hardin could testify as a witness but did not cite authority.  *See* ECF No. 35.  Given that deficiency, the Court ordered the parties to file simultaneous briefs regarding whether and to what extent Mr. Hardin could be called to testify at an evidentiary hearing.  ECF No. 36.  Instead, the parties submitted a joint status report in which they requested that the Court rule on the papers, without an evidentiary hearing.  ECF No. 38.  The Motion is therefore ripe for adjudication.[2]

## II.     Legal Standard

"The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it."  *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).  However, "[d]isqualification is a harsh measure and is generally disfavored by the court."  *Buschmeier v. G & G Invs., Inc.*, No. 02:03mc00506, 2007 WL 4150408, at *5 (W.D. Pa. Nov. 19, 2007) (McVerry, J.).  Thus, disqualification "never is automatic" and "the court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule."  *Miller*, 624 F.2d at 1201.  "Additionally, the court must prevent litigants from using motions to disqualify opposing counsel for tactical purposes."  *Hamilton v. Merrill Lynch*, 645 F. Supp. 60, 61 (E.D. Pa. 1986).

To resolve a disqualification motion, the Court takes a two-step approach.  First, the Court asks whether the representation has been or will be an ethical violation.  *See Jackson v. Rohm & Haas Co.*, No. CIV.A. 05-4988, 2008 WL 3930510, at *2 (E.D. Pa. Aug. 26, 2008).  This District has adopted, with a minor modification, Pennsylvania's Rules of Professional Conduct as the

---

[2] The Court has jurisdiction over this matter because the parties are completely diverse and the amount in controversy exceeds $75,000.  *See* 29 U.S.C. § 1332;  ECF No. 1 ¶¶ 27–33.

applicable rules. W.D. Pa. L. Cv. R. 83.3(A)(2). Second, the Court asks whether disqualification is the appropriate sanction for the violation. *See Jackson*, 2008 WL 3930510, at *2. In this regard, the court has "wide discretion" and must "consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Miller*, 624 F.2d at 1201. Ultimately, the burden falls on the moving party to "clearly show that continued representation by opposing counsel would be impermissible." *Buschmeier*, 2007 WL 4150408, at *5.

**III.    Discussion**

Defendants argue that Mr. Hardin and, by extension, Hardin Thompson may not continue to represent On-Site because doing so would violate Rules 1.6, 1.7, 1.13, and 3.7. The Court will address Rules 1.6 and 1.7 together, before turning to Rule 1.13 and then Rule 3.7. Ultimately, the Court concludes that Defendants have failed to carry their burden to "clearly show" a violation of any of these rules, and therefore disqualification is unwarranted. *Buschmeier*, 2007 WL 4150408, at *5.[3]

    **A.    Defendants Have Not Established a Violation of Rules 1.6 or 1.7**

Defendants argue that Hardin Thompson's continued representation of On-Site would violate Rules 1.6 and 1.7 because the firm previously represented Mr. Williams, Jr. and Ms. Ceravolo. Rule 1.6 generally prevents a lawyer from disclosing "information relating to representation of a client . . . , except for disclosures that are authorized in order to carry out the representation." Pa. R.P.C. 1.6(a). Rule 1.7 generally prohibits representations that would result in a "concurrent conflict of interest." A concurrent conflict of interest exists where "the

---

[3] Because Defendants have failed to show a violation of the Rules by Mr. Hardin, the Court does not address Defendants' argument that regarding imputation under Rule 1.10. Accordingly, for the purposes of this analysis, the Court will refer to Mr. Hardin and Hardin Thompson interchangeably.

representation of one client will be directly adverse to another client" or where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client [or] a former client." Pa. R.P.C. 1.7(a)(1)–(2). When it comes to responsibilities to former clients, the commentary of Rule 1.7 cross-references Rule 1.9, which provides in pertinent part that a lawyer "who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Pa. R.P.C. 1.7 cmts. 1, 9.

To determine whether Hardin Thompson's representation of On-Site presents a problem under Rules 1.6 and 1.7, the Court must first determine whether and to what extent Hardin Thompson has ever represented Mr. Williams, Jr. and/or Ms. Ceravolo individually. Though neither party has offered a standard for determining whether an attorney-client relationship formed, the Court will adopt the standard set forth in *Atkinson v. Haug*, 622 A.2d 983 (Pa. Super. 1993), as have other courts in this Circuit. *See, e.g.*, *Brice v. Hoffert*, No. 5:15-cv-4020, 2016 WL 3981361, at *3 (E.D. Pa. July 25, 2016) (applying *Atkinson* to resolve a disqualification motion). Under *Atkinson*, an attorney-client relationship exists, even in the absence of an express agreement, where: "1) the purported client sought advice or assistance from the attorney;  2) the advice sought was within the attorney's professional competence;  3) the attorney expressly or impliedly agreed to render such assistance;  and 4) it is reasonable for the putative client to believe the attorney was representing him." 622 A.2d at 986.

Initially, the parties agree that Hardin Thompson represented Mr. Williams, Jr. and Ms. Ceravolo "regarding a vehicle lease with Porsche of Pittsburgh." ECF No. 21 ¶ 5. Defendants have not, however, made any effort to show how that representation is "substantially related" to

the instant dispute regarding misappropriation or that Hardin Thompson would be able to use any confidential information gleaned from that representation in litigating this matter for On-Site. Thus, the prior representation regarding the lease is not a basis for disqualification under Rules 1.7 and 1.9, which allow lawyers to represent a client that is adverse to a former client in an unrelated matter. Consistent with Rule 1.9(c), Hardin Thompson may not "use information relating to the [lease] representation to the disadvantage of [Defendants] except as the[] Rules would permit or require with respect to a client, or when the information has become generally known" and may not "reveal information relating to the [lease] representation except as the[] Rules would permit or require with respect to a client."

The key question, then, is whether Hardin Thompson represented Defendants regarding the alleged misappropriation at issue here. Defendants, notably, have not submitted *any* evidence in which they state that Hardin Thompson represented them individually with respect to the matters at issue. To the contrary, Defendants assert that Mr. Hardin "worked with Steven Williams, Jr. *as [the] President and Chief Operating Officer of [On-Site]*, on legal matters" including "the alleged financial misconduct that is at the heart of this litigation." ECF No. 21 ¶ 4 (emphasis added); ECF No. 21-7. Consistent with Defendants' representation that Mr. Williams, Jr. worked with Mr. Hardin in his capacity as a constituent of the company, Mr. Hardin has submitted an affidavit unequivocally denying that he or his firm represented Defendants *individually* regarding the alleged misappropriation. ECF No. 24 at 3–6, 11. From this record, the Court finds that any advice or assistance Defendants sought was for On-Site, not themselves individually, and that it would have been unreasonable for Defendants to believe that Hardin Thompson represented them individually in this matter (if they believed that Hardin Thompson represented them individually at all in this matter, which has not been established).

The remainder of Defendants' argument regarding Rules 1.6 and 1.7 turns on Mr. Williams, Jr.'s purported sole ownership of On-Site. That argument does not carry the day at this stage. Perhaps, as Plaintiffs concede, there would be a disqualifying conflict if Mr. Williams, Jr. was truly On-Site's sole shareholder. ECF No. 24 at 9. But Defendants have not carried their burden to clearly show Mr. Williams, Jr.'s sole ownership, such that disqualification is warranted. The parties have submitted competing evidence on this issue, which appears to be central to Defendants' defense on the merits, not just their disqualification motion. *See, e.g.*, ECF No. 40 at 11. Under the circumstances, where the record is insufficient to support disqualification but the factual issue will be disputed throughout the case, the Court will deny Defendants' Motion without prejudice and allow them to renew it if and when "evidence later comes to light that would counsel in favor of disqualification." *Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78, 115 (D.D.C. 2020) (denying disqualification motion brought under substantially similar rule where evidence regarding ownership was mixed and movant failed to carry their "high burden" on the issue).

In sum, Defendants have failed to carry their burden to clearly show an attorney-client relationship between Hardin Thompson and Defendants individually. They have therefore failed to show that Hardin Thompson's representation of On-Site in this matter would violate Rule 1.6 or 1.7. The Court accordingly, will deny the Motion on this point, but will do so without prejudice.[4]

---

[4] Defendants analyze Mr. Williams, Jr. and Ms. Ceravolo together; they do not argue that a separate analysis should apply for each of them. Accordingly, the Court has likewise analyzed the Defendants together. Although, in theory, Ms. Ceravolo's interactions with Mr. Hardin may have differed from Mr. Williams, Jr., only Mr. Williams Jr. has offered an affidavit in support of the instant Motion and so Ms. Ceravolo's side of the story is absent from the record. The Court therefore finds it appropriate to conclude that if Mr. Hardin did not form an attorney-client relationship with Mr. Williams, Jr., he likewise did not form such a relationship with Ms. Ceravolo. Certainly, Defendants have not developed a record from which the Court could distinguish between Defendants for the purpose of its analysis.

**B.     Defendants Have Not Established a Violation of Rule 1.13**

Defendants next argue that disqualification is required under Rule 1.13, which governs the representation of organizational clients. In their moving papers, however, Defendants failed to indicate what provision of the Rule they contend Hardin Thompson violated or would violate. That omission is significant because the Rule covers a wide range of subject matter. For example, the Rule details a lawyer's obligations when he or she "knows that an officer, employee or other person associated with the organization" is likely to substantially injure the entity through his or her conduct. Pa. R.P.C. 1.13(b)–(c). Next, the Rule provides that "[i]n dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing." Pa. R.P.C. 1.13(d). And the Rule sets forth rules for dual representation of entities and constituents, cross-referencing Rule 1.7. Pa. R.P.C. 1.13(e).

It was not until Defendants filed their reply brief that they pinpointed Rule 1.13(d) as the focus of their Motion, arguing that in support of Plaintiffs' opposition, "Mr. Hardin does not assert that he complied with subsection (d) of Rule 1.13." ECF No. 32 at 2. That argument does not warrant disqualification. For one thing, Mr. Hardin's failure to specifically address Rule 1.13(d) is unsurprising, given that Defendants did not address that provision in their opening papers. More importantly, it is Defendants' burden, as the moving party, to establish a violation of Rule 1.13, and pointing out what Mr. Hardin did not attest to is insufficient. It was not until after Defendants filed their reply that they filed a supplemental declaration by Mr. Williams, Jr. in which he attested for the first time, "At no time did Kenneth Hardin, Esq., ever advise me that he represented [On-Site] and that [On-Site's] interests were adverse to my or . . . Bernadette Ceravolo['s] interests."

9

ECF No. 33 ¶ 4.  But that argument and Mr. Williams, Jr.'s supplemental declaration is too late because it was not included with Defendants' opening brief.  *See In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023) ("Arguments raised for the first time before a district court in a reply brief are deemed forfeited.").

Not only is Mr. Williams, Jr.'s declaration too late, the record is insufficient to establish a violation of Rule 1.13(b).  To reiterate, a Rule 1.13(d) warning is required only where the lawyer knew or should have known that the interests of a constituent were adverse to the organization.  Thus, Defendants' burden is to clearly show that Mr. Hardin knew or should have known that Mr. Williams, Jr.'s and Ms. Ceravolo's interests were adverse to On-Site's when he dealt with them.  It was therefore incumbent on Defendants to set forth evidence clearly showing what Mr. Hardin knew, when he knew it, and the nature of his dealings with Mr. Williams, Jr. and Ms. Ceravolo.

Defendants' contentions are too ambiguous to support disqualification under Rule 1.13, even crediting Mr. Williams, Jr.'s attestation that Mr. Hardin never gave a Rule 1.13(d) warning.  *See Buschmeier*, 2007 WL 4150408, at *5 ("vague and unsupported allegations are not sufficient to meet" movant's burden).  Initially, Defendants vaguely assert that at some point in 2022 "a dispute over the handling of [On-Site] finances and credit card charges arose between Plaintiffs and Defendants."  ECF No. 21 ¶ 6.  Defendants go on to assert that Mr. Hardin reviewed certain unspecified financial information and had ongoing communicated with Mr. Williams, Jr., Mr. Williams, III, and Mr. Quinn Williams, apparently regarding the same.  *Id.* ¶ 7.  Finally, Defendants state that "Steven Williams, Jr. and Bernadette Ceravolo had individual communications with Mr. Hardin, in which they discussed in detail the financial reports and accusations and in which they provided their refutation of the accusations."  ECF No. 21 ¶ 9.  But without something more regarding what Mr. Hardin knew about the nature of the accusations when he spoke with

Defendants, the Court cannot say that a Rule 1.13(d) warning was required. Although it is tempting to fill in the blanks left open by Defendants with the hindsight that comes from knowing the precise allegations set forth in the Complaint, it is unclear on the current record whether and to what extent those allegations reflect the accusations that Mr. Hardin was aware of when he spoke with Mr. Williams, Jr. and Ms. Ceravolo.[5] Defendants—who declined an opportunity to develop the record at an evidentiary hearing—have thus failed to carry their burden to establish a violation of Rule 1.13(d).

### C. Defendants Have Not Established a Violation of Rule 3.7

Defendants' final argument relies on Rule 3.7, which generally prevents a lawyer from representing a client "at a trial in which the lawyer is likely to be a necessary witness." Pa. R.P.C. 3.7(a). They argue that disqualification under this Rule is warranted because Mr. Hardin would be needed to testify regarding On-Site's corporate structure—i.e., regarding who owns the company—and regarding information from the investigation of Defendants' alleged misappropriation. Plaintiffs respond that the rule is inapplicable because Mr. Hardin is not likely to be a necessary witness on these topics.

At this stage, the Court agrees with Plaintiffs that Defendants have failed to show that disqualification is warranted under Rule 3.7. "In order for a witness to be deemed necessary, he must have 'crucial information' in his possession which must be divulged. Evidence in the

---

[5] Defendants do note that "[a]s now alleged in the Complaint, the Plaintiffs were claiming that Defendants . . . misappropriated substantial funds of [On-Site]." ECF No. 21 ¶ 8. At best, that assertion establishes that the "accusations" at issue concerned misappropriation. It does not, however, suggest what Mr. Hardin knew about those accusations and when, which is the crucial factual issue. Indeed, it appears that the existence and extent of any misappropriation was unknown until the forensic accountant issued their report. *See, e.g.*, ECF No. 24 at 5–6 ("[Hardin Thompson], as counsel for On-Site, responded to shareholder concerns about corporate expenditures and spending. . . . The shareholders, in their capacity as owners and agents of the corporation, all provided counsel with the business' financial information and business records in order to conduct a forensic accounting. . . . Mr. Hardin did not make the finding that funds were misappropriated, nor did he advise Defendants on these previous expenditures of corporate funds . . . .").

possession of a witness which is cumulative or obtainable elsewhere will not be deemed 'necessary.'" *Aamco Transmissions, Inc. v. Baker*, No. 06-5252, 2008 WL 509220, at *3 (E.D. Pa. Feb. 25, 2008) (internal citation omitted).  Here, it appears that there are several witnesses who will be able to testify regarding On-Site's corporate structure, the alleged misappropriation, and the results of the internal investigation.  For example, Mr. Williams, Jr. will be able to testify as to why he believes he is the sole shareholder of On-Site and Mr. Williams, III and Mr. Quinn Williams, are free to offer their own testimony as to why they believe they each own 25% of the company.  Similarly, the parties and other witnesses will presumably be able to testify to the alleged misappropriation and its investigation, which resulted in an auditor's report.

The Court, therefore, finds that disqualification is unwarranted under Rule 3.7.  However, Defendants are free to renew their Motion at a later stage if circumstances change.  *See United Food & Com. Workers Health & Welfare Fund of Ne. Pa. v. Darwin Lynch Adm'rs, Inc.*, 781 F. Supp. 1067, 1069–70 (M.D. Pa. 1991) (Rule 3.7 "permits the court to delay ruling until it can determine whether another witness can testify").

**IV.     Conclusion**

For the foregoing reasons, Defendants' Motion to Disqualify is DENIED WITHOUT PREJUDICE.

DATED this 16th day of June, 2023.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record