IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN WILLIAMS, III, ON-SITE COMPANIONSHIP SERVICES, CORP., <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN WILLIAMS, JR., BERNADETTE CERAVOLO, <br><br> Defendants. | 2:23-CV-00715-CCW |
| KAYLA CALLOWAY, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN WILLIAMS, JR., BERNADETTE CERVALO, <br><br> Defendants. | 2:23-CV-01695-CCW |

**OPINION AND ORDER**

*Pro se* Plaintiffs Steven Williams, III and Kayla Calloway filed separate actions against Defendants Steven Williams, Jr. and Bernadette Ceravolo for, *inter alia*, waste of corporate assets, breach of fiduciary duty, and retaliatory termination. 23-715, ECF No. 1; 23-1695, ECF No. 14. Both lawsuits were subsequently settled under a global settlement agreement.[1] 23-715, ECF No. 128; 23-1695, ECF No. 20.  Currently before the Court are Plaintiffs' identical Emergency

---

[1] The Court exercised diversity jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332.  The Court has ancillary jurisdiction over enforcement of the parties' settlement agreement.  *See* 23-715, ECF No. 122 (order closing case and retaining jurisdiction to enforce settlement); 23-1695, ECF No. 16 (same); *see also Nelson v. Pennsylvania*, 125 F. App'x 380, 381–82 (3d Cir. 2005) ("A district court may have ancillary jurisdiction to enforce a settlement agreement if the court retains jurisdiction[.]").

Motions to Enforce Settlement. 23-715, ECF No. 133; 23-1695, ECF No. 25. Defendants responded to Plaintiffs' Motions, which are now ripe for adjudication. 23-715, ECF No. 137; 23-1695, ECF No. 29. For the reasons set forth below, the Court will grant both Motions in part.

## I. Background

Plaintiffs filed the instant actions against both Defendants on April 28, 2023 and on October 25, 2023, respectively. Mr. Williams, III asserted Pennsylvania state-law claims for waste of corporate assets, unjust enrichment, breach of fiduciary duty, and conversion. 23-715, ECF No. 1. Ms. Calloway asserted Pennsylvania state-law claims for waste of corporate assets, unpaid wages, retaliatory termination, and discriminatory termination. 23-1695, ECF No. 6. Plaintiffs' claims relate to their time working for On-Site Companionship Services ("OCS"), a closely held corporation founded by Mr. Williams, Jr. that operates residential care homes.[2] 23-715, ECF No. 1; 23-1695, ECF No. 6.

On January 9, 2024, Mr. Williams, Jr. and Ms. Ceravolo filed joint stipulations of dismissal at each civil action number, informing the Court that the parties had resolved both lawsuits in a global settlement agreement. 23-715, ECF No. 128; 23-1695, ECF No. 20. Under the settlement, Plaintiffs agreed to settle their claims against Defendants for $300,000, to be paid in monthly installments over three years.[3] 23-715, ECF No. 130-3 at 2; 23-1695, ECF No. 22-3 at 2. The Court subsequently dismissed each case with prejudice but retained jurisdiction over any issues arising during the finalization and enforcement of settlement. 23-715, ECF Nos. 122, 129; 23-1695, ECF Nos. 16, 21. On September 10, 2025, Steven Williams, III and Kayla Calloway filed

---

[2] OCS was initially a plaintiff in Civil Action No. 23-715. However, after OCS' counsel withdrew, OCS was attempting to proceed pro se, which corporations are not permitted to do. 23-715, ECF No. 80. Further, Mr. Williams, Jr., Ms. Ceravolo, Mr. Williams, III, and Ms. Calloway were the sole parties to the settlement agreement. *See* 23-715, ECF No. 130-3; 23-1695, ECF No. 22-3. OCS is thus not a party to the Motions to enforce settlement before the Court.

[3] The settlement agreement does not specify how the $300,000 should be allocated between the Plaintiffs. *See generally* 23-715, ECF No. 130-3; 23-1695, ECF No. 22-3.

2

identical Emergency Motions to Enforce Settlement at each civil action number. 23-715, ECF No. 133; 23-1695, ECF No. 25.

Plaintiffs' Motions contend that, in August of 2025, Mr. Williams, Jr. and Ms. Ceravolo stopped making settlement payments under terms of the settlement agreement and have not many any payment since, leaving nearly $150,000 of the total settlement unpaid. 23-715, ECF No. 133; 23-1695, ECF No. 25. Mr. Williams, Jr. and Ms. Ceravolo, responding through counsel, admitted that they had ceased making payments, but asserted that Mr. Williams, III and Ms. Calloway had breached the settlement agreement by disparaging OCS and by altering OCS payroll records, relieving Defendants of their obligation to continue making payments. 23-715, ECF No. 137; 23-1695, ECF No. 29. On November 18, 2025, the Court held an evidentiary hearing regarding Plaintiffs' Motions in which the parties presented evidence about whether Mr. Williams, III and Ms. Calloway breached the settlement agreement.

## II. Legal Analysis

Mr. Williams, III and Ms. Calloway assert that Mr. Williams, Jr. and Ms. Ceravolo ceased making monthly settlement payments in August 2025, that $149,500 of the $300,00 contemplated in the settlement agreement remains unpaid, and that $34,000 is currently past due under the payment schedule outlined in the settlement agreement. 23-715, ECF No. 133; 23-1695, ECF No. 25; Transcript at 10:1–12, 11:12–22.[4] At the evidentiary hearing, the parties agreed that the settlement agreement is an enforceable contract, and that Pennsylvania law governs the parties' dispute. Transcript at 8:20–9:3. Further, Defendants concede that $149,500 remains unpaid and that approximately $34,000 of that amount is currently in default. 23-715, ECF No. 137; 23-1695,

---

[4] Because neither party requested an official transcript of the November 18, 2025 evidentiary hearing, and to avoid unnecessarily imposing transcription costs on the parties, , the Court's citations are to the court reporter's unofficial transcript.

3

ECF No. 29; Transcript at 11: 9–12, 12:1–12. Defendants argue, however, that their nonpayment is justified because Plaintiffs breached the agreement, by disparaging OCS to its employees and by improperly accessing OCS payroll systems. 23-715, ECF No. 137; 23-1695, ECF No. 29.

Accordingly, the questions before the Court are: (1) whether Plaintiffs breached the settlement agreement; and (2) if so, whether any breach was material such that Defendants are relieved from their obligation to make payments under the agreement. *See Berkowitz v. Mayflower Sec., Inc.*, 317 A.2d 584, 586 (Pa. 1974) (material breach relieves other party's obligation to perform under the contract); *Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 468 (Pa. Super. Ct. 2003) ("[T]he non-breaching party does not have a right to suspend performance if the breach is not material."). The Court will first address Defendants' argument that Plaintiffs breached the agreement by accessing OCS payroll systems, and then address Defendants' argument that Plaintiffs breached by disparaging OCS.

### A.     Ms. Calloway's Use of OCS' Payroll System Was Not a Breach

In their response to Plaintiffs' Motions, Defendants exhibit a screenshot from an OCS payroll system showing a payroll entry made by a user named Ariona Sherwood on September 5, 2025. 23-715, ECF No. 137-1 at 1, 3; 23-1695, ECF No. 29-1. Defendants contend the screenshot demonstrates that Ms. Calloway "altered OCS payroll records while using another OCS employee login credentials[,]" constituting "an unauthorized use of company systems, a misrepresentation of identity, and an improper issuance of company funds." 23-715, ECF No. 137 at ¶ 6; 23-1695, ECF No. 29 at ¶ 6.

While Defendants' brief does not identify which portion of the settlement agreement Ms. Calloway allegedly breached by accessing OCS payroll systems, paragraph (f) of the agreement provides that "Steven Williams III and Kayla Calloway agree not to engage in any financial or

business transaction in connection with or on behalf of OCS, except as otherwise stated herein." 23-715, ECF No. 130-3 at 3;  23-1695, ECF No. 22-3 at 3.  Paragraph (f) must be read in conjunction with paragraph (h) of the settlement agreement, which provides that "Steven Williams III and Kayla Calloway agree to reasonably cooperate with Steven Williams Jr. and Bernadette Ceravolo and OCS to the extent that Steven Williams III's and Kayla Calloway's assistance or involvement is required for OCS's operations[.]"  23-715, ECF No. 130-3 at 3;  23-1695, ECF No. 22-3 at 3.

At the evidentiary hearing, Plaintiffs presented testimony from Ms. Sherwood, the employee whose credentials Defendants contend Ms. Calloway stole.  Ms. Sherwood testified that she allowed Ms. Calloway to use her log-in credentials because management never provided Ms. Calloway with her own access credentials, although she requested them.  Transcript at 17:2–13.  Ms. Sherwood further testified that Ms. Calloway accessed the payroll system solely to ensure that employees were paid accurately, and that Ms. Calloway did so after OCS leadership asked her to assist the company.  *Id*. at 18:4–13.  Plaintiffs also provided an affidavit from Ms. Sherwood stating that Ms. Calloway used her login credentials with Ms. Sherwood's express authorization as a "temporary measure taken during a known technical difficulty[.]"  23-715, ECF No. 140-5 at 4;  23-1695, ECF No. 33-5 at 4.

The Court finds Ms. Sherwood's testimony regarding Ms. Calloway's use of her log-in credentials credible.  *United States v. Garcia*, 521 F. App'x 71, 73 (3d Cir. 2013) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)) (granting deference to a district court judge when making determinations about the credibility of witnesses because "only the trial judge can be aware of the variations in demeanor and tone of voice" of a witness).  Notably, Defendants did not attempt to impeach Ms. Sherwood's testimony that Ms. Calloway accessed the payroll system

5

for legitimate business reasons, or Ms. Sherwood's testimony that Ms. Calloway returned to OCS with the knowledge and consent of management.[5] That is important, because paragraph (h) of the settlement agreement specifically contemplates, and thus allows for, Plaintiffs' involvement in OCS' business operations.

Therefore, the Court finds that Ms. Calloway's use of the payroll system did not breach the settlement agreement.

### B. The WhatsApp Messages Were Not a Material Breach

In their response to Plaintiffs' Motions, Defendants exhibit screenshots of WhatsApp messages in which Ms. Calloway informs a group of OCS employees that she and Mr. Williams, III are resigning from OCS. 23-715, ECF No. 137-2; 23-1695, ECF No 29-2. In the messages, Ms. Calloway stated that "the financial and operational damage sustained by the company over the past several years . . . is both significant and, regrettably, irreparable." 23-715, ECF No. 137-2 at 1, 3; 23-1695, ECF No. 29-2 at 1, 3. Ms. Calloway also stated in the WhatsApp messages that OCS "recently filed for Chapter 11 Subchapter V bankruptcy—a matter of public record that, in our opinion, should have been proactively shared with staff[,]" and that "most of you have already been informed by Supports Coordinators about the current licensing issues and the status of OCS with the Office of Developmental Programs." 23-715, ECF No. 137-2 at 3; 23-1695, ECF No. 29-2 at 3.

Defendants contend these messages breached two provisions of the settlement agreement: paragraph 2(e), in which the parties "agree not to make or to cause any statements or posts to be made, distributed, or published regarding Steven Williams Jr. Bernadette Ceravolo, and/or OCS[,]" and paragraph 8, in which the parties "agree that . . . they will not disparage, slander,

---

[5] Mr. Williams, Jr. also testified at the evidentiary hearing that Ms. Calloway was assisting OCS with the consent and knowledge of OCS management. Transcript 76:6–13.

defame, or otherwise impugn each other, the conduct or actions of the Parties, or the business of the Parties." 23-715, ECF No. 137 at ¶¶ 3–4; 23-1695, ECF No 29 at ¶¶ 3–4. At the evidentiary hearing, Mr. Williams, Jr. described Ms. Calloway's WhatsApp messages as a "nuclear bomb" that ruined his opportunity to address the challenges OCS faced and that the messages therefore ultimately caused OCS' insolvency. Transcript at 82:2, 86:4–8. Mr. Williams, Jr. further testified that, in the days after Ms. Calloway sent the WhatsApp messages, many OCS employees called off from their scheduled shifts. *Id*. at 81:9–19, 89:1–6.

Ms. Calloway acknowledges sending the WhatsApp messages. Transcript at 56:2–12; 23-715, ECF No. 140 at 3; 23-1695, ECF No. 33 at 3. But Ms. Calloway testified that employees were already aware of OCS' licensing issues at the time she sent the messages and that Mr. Williams, Jr. had directly told her that OCS would be filing for bankruptcy. Transcript at 67:7–17, 68:18–23. Ms. Calloway also testified that she was not trying to disparage or hurt OCS, but simply wanted to share important information with OCS employees who frequently contacted her when they had difficulty receiving their pay and tax forms from the company. Transcript at 61:15–22, 67:7–25, 68: 9–13.

The Court finds that, even if the WhatsApp messages constituted disparagement of OCS, and thus breached paragraphs 2(e) and 8 of the settlement agreement, any such breach was not material. Under Pennsylvania law, the following factors are considered to determine whether a breach of a contract was material:

> a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived;
> c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

7

> d) the likelihood that the party failing to perform or [failing to] offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

*Widmer Eng'g*, 837 A.2d at 468 (citing Second Restatement of Contracts § 241 (1981)). Here, the Defendants' primary benefit of the settlement agreement was the release of Plaintiffs' claims against them. Ms. Calloway's WhatsApp messages did not deprive Defendants of that benefit. But if Defendants are released from their obligation to continue making settlement payments, Plaintiffs would be deprived of roughly half of the amount for which they agreed to settle their claims. Accordingly, the first factor weighs against finding any breach to be material.

Additionally, the Court finds that the final factor—the extent to which the behavior of the breaching party comports with standards of good faith and fair dealing—also disfavors a finding that the WhatsApp messages materially breached the settlement agreement. While Defendants assert that the cessation of settlement payments was justified by Ms. Calloway's alleged breach of the agreement, Mr. Williams, Jr. testified that he stopped making settlement payments because his bankruptcy attorney advised him that "any payments going out from OCS [should] cease and desist" pending OCS' bankruptcy proceeding.[6] Transcript, 72:1–7 91:5–11. Additionally, Plaintiffs' Motions include exhibits of text messages in which Mr. Williams, Jr. tells Mr. Williams, III that Mr. Williams, Jr. is "not allowed" to make any further settlement payments as a result of OCS' bankruptcy petition. 23-715, ECF No. 133-2; 23-1695, ECF No 25-2. But, as the parties acknowledged at the evidentiary hearing, OCS' bankruptcy did not impact Defendants' obligation

---

[6] Mr. Williams, Jr. also testified that he would like to continue making settlement payments to Plaintiffs but cannot do so because he "can't afford it . . . at this time" because of "what happened to the company." Transcript, 91:5–11.

8

to continue making settlement payments, because OCS is not a party to the settlement agreement. *See generally* 23-715, ECF No. 130-3 at 2; 23-1695, ECF No. 22-3 at 2.

Furthermore, while Ms. Calloway sent the WhatsApp messages at issue on September 4, 2025, Defendants ceased making payments under the schedule detailed in the agreement on August 5, 2025. 23-715, ECF No. 133 at 2; 23-1695, ECF No 25 at 2; Transcript 57:7–9, 40:1–4. The Court thus finds it difficult to credit Mr. Williams, Jr.'s testimony that the WhatsApp messages meaningfully worsened OCS' already precarious position. The sequence of relevant events, and Mr. Williams, Jr.'s direct testimony at the hearing, suggest that Defendants' claim that Plaintiffs breached the agreement were post-hoc justifications for Defendants' inability to continue making payments.

Conversely, the Court finds Ms. Calloway's testimony that she sent the WhatsApp messages to provide transparency to OCS employees, and not to harm OCS, to be credible. Ms. Calloway's testimony was supported by Ms. Sherwood, who testified that she and other OCS employees frequently had issues receiving their pay and tax forms from the company and were grateful for the information Ms. Calloway provided. Transcript at 19:12–20:7; 23-715, ECF No. 140-5; 23-1695, ECF No. 33-5 at 3. Accordingly, the final factor also weighs against a finding of materiality.

The Court finds that the second, third, and fourth factors in the materiality analysis do not weigh for or against either party. Considering all the applicable factors, the Court is persuaded that, even if the WhatsApp messages breached the settlement agreement, any such breach was not "so substantial as to justify the injured party's regarding the whole transaction as at an end[.]" *Widmer Eng'g, Inc.*, 837 A.2d at 468. In other words, any such breach was not material and did

not release Defendants from their obligation to continue making payments under the terms of the settlement agreement.

### III.   Conclusion

For the foregoing reasons, Plaintiffs' Motions will be GRANTED IN PART, to the extent the Motions seek immediate payment of the amount currently in default and the resumption of payments pursuant to the terms outlined in the settlement agreement.  To the extent the Motions seek additional relief, they are DENIED.

DATED this 9th day of December, 2025.

BY THE COURT:

 /s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

cc (via United States Mail)

Steven Williams, III, pro se
4638 Dunberry Pl. SW
Concord, NC 28027

Kayla Calloway, pro se
4638 Dunberry Pl. SW
Concord, NC 28027